IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANTE JACKSON, | : | |
|     *Plaintiff*, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 20-0687 |
| | : | |
| CORRECTIONAL OFFICER BUENO, et al., | : | |
|     *Defendants*. | : | |

**MEMORANDUM**

**JONES, II  J.**                                                                                          **June 2, 2020**

Dante Jackson, a prisoner in custody at SCI Phoenix, filed a handwritten civil rights Complaint pursuant to 42 U.S.C. § 1983. Named as Defendants are seven employees at SCI Phoenix. For the following reasons, the claims against Defendant Correctional Officer R. Jaynes will be served. All claims against all other Defendants will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

**I.     FACTUAL ALLEGATIONS**

Jackson's Complaint is lengthy and repetitive, and his handwriting is often difficult to read. He asserts that he was denied due process in the adjudication of two misconducts he received, #B623987 and #D257124. Misconduct #B623987 arose from an incident on the morning of April 20, 2019 when Jackson was in his cell using his toilet and prison officials arrived to conduct a cell search of his block. When the door to his cell was opened, he was assaulted by Defendant Correctional Officer R. Jaynes, who punched him several times in the head while stating "this is for Officer Webb and Officer Vorhese." (ECF No. 1 at 2-3.)[1] Jackson had filed prior grievances and lawsuits about the conduct of correctional officers and experienced retaliation for doing so when his meals were tampered with and delayed. (*Id.* at 3.) Jaynes allegedly falsified a misconduct

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

report after the assault, claiming that Jackson spit on him, when Jackson actually spit on the floor. (*Id.* at 4.) Following the incident, he was taken to a psychiatric observation area and then to the restricted housing unit where he was given two written misconducts. (*Id.*) Misconduct #D257124 alleged that drugs were found in his cell, although he claims the substance was only tobacco. (*Id.* at 5.) Misconduct #B623987 alleged an assault on staff due to the spitting incident. (*Id.*) Jackson claims that he was unable to assert a defense to the charges at the ensuing hearing. He alleges that Defendant Correctional Officer Bueno committed fraud, tampered with evidence, and sabotaged his defense by testifying that he found K-2 synthetic marijuana in Jackson's cell. (*Id.* at 5-6.)

Jackson alleges that Defendant Hearing Examiner Yodis violated his due process rights in the way he conducted the misconduct hearing. (*Id.* at 6.) Yodis allegedly failed to review video evidence of the incident and would not permit Jackson to call witnesses. (*Id.* at 6-7.) The unnamed witnesses would allegedly have testified that Jackson was never permitted to properly clean his cell from the time he was assigned to it, and that whatever was found could have belonged to a prior occupant. (*Id.* at 7.) The video allegedly would have shown that Jackson never spit on Defendant Jaynes and that the substance was tobacco. (*Id.* at 8.) Jackson also alleges that the misconduct was too vague for him to respond.[2] (*Id.*)

On April 26, 2019, Jackson appealed Yodis's decision on the two misconducts to the Program Review Committee. Defendants J. Erra, M. Sipple, and J. Sober were members of the Committee. (*Id.* at 12.) Jackson requested to review video evidence and argued that he was not allowed to call witnesses at his hearing. (*Id.*) His appeal was denied at this level. (*Id.* at 13.)

---

[2] Although the allegation is difficult to read and to place in context, Jackson also appears to allege that Yodis made jokes about his religion, race, and sexuality in the past, possibly at a hearing on some prior misconduct charge, leading to his being harassed and assaulted by corrections officers on June 14-15, 2018. (*Id.* at 10.) These allegations appear to be background information to the claim that Yodis improperly adjudicated the two misconduct charges described in the Complaint due to bias, rather than a separate claim.

Jackson next alleges that he appealed Yodis's decision to Defendant John Doe Facility Manager. (*Id.* at 13-14.) Even though he told John Doe Facility Manager that he was denied the ability to call witnesses and present video evidence at his hearing before Yodis, Doe only addressed whether Jackson's sixty-day term in disciplinary segregation was appropriate. (*Id.* at 14.) Jackson alleges that John Doe Facility Manager failed to protect his rights, disregarded fraud, and refused to address the issue he raised in his appeal, namely that never pled guilty to the prior misconduct charge and his numerous claims about what the video evidence would have shown, had he been permitted to view it and call witnesses. (*Id.* at 15-16.)

According to Jackson, John Doe Facility Manager denied his appeal on the ground that the punishment was "in conformity with policy and not disproportionate to the offense." (*Id.* at 16.) He found, contrary to Jackson's assertion, that Yodis had viewed the video evidence even though Jackson had not been permitted to do so, there was no requirement that Jackson be afforded an opportunity to view the video, and that Jackson had failed to substantiate his claim that Yodis prevented him from presenting evidence at the hearing. (*Id.*)  Jackson complains that John Doe Facility Manager also did not address his claims that Yodis was biased and conducted his hearings in a "social club" atmosphere with correctional officers hanging around and socializing while the hearing was taking place. (*Id.* at 16-18.)  He asserts that the procedures used in his hearing and appeal violated his due process rights. (*Id.* at 18.)  Jackson's misconducts were upheld at this level of review. (*Id.*)

Finally, Jackson appealed to Chief Hearing Examiner Zachary Mosliak for the final level of review. (*Id.* at 18.)  At this level, the decision on Misconduct #B623987 was upheld, but the decision on Misconduct #D257124 was vacated. (*Id.*)  Jackson asserts he did not receive notice of the decision until he had already served the time assessed for Misconduct #D257124. (*Id.*)

Jackson asserts that Defendant Jaynes violated his First Amendment rights because he assaulted him in retaliation for filing grievances and for a prior lawsuit against Vorhese and a prior lawsuit against a correctional officer named Webb.  (*Id.* at 20.)  He also asserts an Eighth Amendment excessive force claim against Jaynes for the assault during the cell search.[3]  (*Id.* at 21.)  Jackson asserts a claim against Defendant Bueno based upon Bueno's alleged falsification of evidence at the misconduct hearing.  (*Id.* at 19, 20.)

Jackson alleges that Yodis violated his First and Fourteenth Amendment rights when he used his position to suppress evidence and exhibited bias in his adjudication of the two misconduct charges.  He asserts Program Review Committee members Erra, Sipple, and Sober and Facility Manager John Doe also violated his First and Fourteenth Amendment rights in their review of Yodis's decision on the misconduct charges.  (*Id.* at 22.)  He seeks money damages, the reversal of the decision on Misconduct #B623987, and an investigation.  (*Id.* at 22-23.)

## II.   STANDARD OF REVIEW

Because Jackson was unable to pay the filing fee in this matter, the Court granted him leave to proceed in forma pauperis in an Order filed on February 14, 2020.[4]  (ECF No. 4.)  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief

---

[3] In this same section of the Complaint, Jackson mentions that Jaynes was deliberately indifferent to his serious medical needs after the assault but states no other facts upon which he bases this conclusory allegation.

[4] Because Jackson is a prisoner, under the provisions of the Prison Litigation Reform Act, he must still pay the filing fee in full in installments.

that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Jackson is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

The vehicle by which a prisoner like Jackson may assert constitutional claims in federal court is 42 U.S.C. § 1983. That section provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Claims Against Defendant Jaynes

Jackson alleges claims under the Eighth Amendment for excessive force and under the First Amendment for retaliation against Defendant Jaynes based on the incident in his cell when Jaynes alleged punched Jackson claiming he did so in retaliation for Jackson having filed grievances and lawsuits.

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). When screening an Eighth Amendment excessive force claim under § 1915, the Court asks whether the prisoner has alleged plausibly that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or

restore discipline." *Id.* at 7.  The factors used to determine whether the force applied was excessive include:  (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.  *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).  Although the extent of an inmate's injuries is relevant to an Eighth Amendment analysis, "there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force." *Id.* at 104.  Thus, the inquiry must be driven by the extent of the force and the circumstances in which it is applied, not by the resulting injuries.  *Id.* at 108; *see also Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002).  The Eighth Amendment does not protect against a *de minimis* use of physical force, so long as it is not of a sort "repugnant to the conscience of mankind." *Brooks*, 204 F.3d at 107 (quoting *Hudson*, 503 U .S. at 9-10).  Jackson's allegation that Jaynes punched him several times in the head while he sat on his toilet in his cell is sufficient for purposes of § 1915 screening and will be permitted to proceed.

In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, No. 19-2580, 2020 WL 2125780, at *3 (3d Cir. May 5, 2020). Jackson's allegation that Jaynes stated during the assault that "this is for Officer Webb and Officer

Vorhese," against whom Jackson had filed prior grievances and lawsuits, is sufficient for purposes of § 1915 screening and will be permitted to proceed.[5]

### B. Claims Involving Placement in Disciplinary Segregation[6]

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. As a threshold matter, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Attorney Gen.*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)); *see also Wolfe v. Pa. Dep't of Corr.*, 334 F. Supp. 2d 762, 773 (E.D. Pa. 2004). In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court shifted the focus of the liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. *See id.* at 481. The Court reasoned, *inter alia*, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. *See id.* at 485. Accordingly, focusing on the nature of the punishment instead of on the words of any regulation, the Court held that the procedural protections in *Wolff v. McDonnell*, 418 U.S. 539 (1974),[7] were inapplicable because the "discipline in segregated confinement did not present the

---

[5] Finally, to the extent noted earlier that Jackson asserts a claim for deliberate indifference to a serious medical need against Jaynes, that allegation is wholly conclusory, unsupported by any facts, and must be disregarded. *Iqbal*, 556 U.S. at 678. This portion of the claim against Jaynes will be dismissed.

[6] While Jackson labels his claims involving the disciplinary proceeding as First and Fourteenth Amendment claims, they are properly construed only as Fourteenth Amendment claims. The United States Court of Appeals for the Third Circuit has expressed a preference for considering filings based on their substance rather than their label, especially those filed by *pro se* litigants. *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (noting a "policy of considering motions based on their substance rather than their title"), *cert. denied*, No. 19-867, 2020 WL 2515456 (U.S. May 18, 2020). To the extent he invokes the First Amendment, his allegations of retaliation against Defendants other than Defendant Jaynes based on constitutionally protected conduct are wholly conclusory and must be disregarded. *Iqbal*, 556 U.S. at 678.

[7] *Wolff* had previously set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the

type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *See Sandin*, 515 U.S. at 486. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See id.* at 484. "When considering whether an inmate's placement in segregated housing triggers a legally cognizable interest courts should consider: (1) the amount of time spend in segregation; and (2) whether the conditions of segregation were significantly more restrictive than those imposed on other inmates in segregation." *Allah v. Bartkowski*, 574 F. App'x 135, 139 (3d Cir. 2014). In *Sandin*, the Supreme Court concluded that placement in disciplinary segregation for thirty days did not deprive the inmate of a protected liberty interest. *See Sandin*, 515 U.S. at 486; *see also Williams v. Bitner*, 307 F. App'x 609, 611 (3d Cir. 2009) (no liberty interest triggered by 90-day placement in disciplinary segregation); *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (no liberty interest triggered by seven-month placement in disciplinary confinement). Moreover, "a thorough investigation is not a requirement of due process in the prison disciplinary setting." *See Parks v. O'Shaughnessy*, Civ. A. No. 14-1268, 2016 WL 4385869, at *4 (M.D. Pa. May 3, 2016); *see also Moles v. Holt*, 221 F. App'x 92, 96 (3d Cir. 2007) (concluding that "a failure to conduct a prompt and thorough investigation prior to a disciplinary hearing does not rise to the level of a due process violation"). Thus, absent a protected liberty interest, a prisoner cannot maintain claims regarding alleged procedural defects prior to and during his misconduct proceedings.

---

presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. *Id.* at 563-67. In addition, the Supreme Court held that there must be "some evidence" which supports the conclusion of the disciplinary tribunal. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

Jackson asserts that he was held in disciplinary segregation for a sixty-day term on the two misconduct charges. (ECF No. 1 at 14.) Accordingly, he cannot assert a protected liberty interest under the Fourteenth Amendment. For this reason, his claims against the remaining Defendants, all of which involve their participation in the disciplinary segregation proceedings, are not plausible and are dismissed pursuant to § 1915(e)(2)(B).

## IV.   CONCLUSION

For the reasons stated, Jackson's claims against Defendant Jaynes will be served. All other claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). Because any attempt at amendment to state plausible claims based on the disciplinary proceedings would be futile, the dismissal of all claims against all other Defendants will be with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-113 (3d Cir. 2002). An appropriate Order follows.

BY THE COURT:

*/s/ C. Darnell Jones, II*
C. DARNELL JONES, II     J.